Telford v. Patton.

Matthew Telford

v.

Livonia J. Patton.

*Gifts—Moneys Deposited in Bank in Name of Another—Certificate of Deposit—Replevin.*

1.   The title of the money in all general deposits passes to the bank in which it is placed.

2.   Where money is deposited in a bank and its certificate of deposit is received by the depositor, it providing for payment of the same within a

time named to another, such other is entitled thereto at the expiration thereof, although the certificate remains in the hands of the depositor.

3. Acceptance of the gift by the person in whose name the certificate was made out, will be presumed, although the depositor dies with the same in his possession, it having never been delivered.

[Opinion filed February 26, 1892.]

APPEAL from the Circuit Court of Jefferson County; the Hon. C. S. CONGER, Judge, presiding.

Messrs. ALBERT WATSON and GEORGE B. LEONARD, for appellant.

Messrs. F. F. NOLEMAN and CASEY & DWIGHT, for appellee.

SAMPLE, J. This suit was brought in replevin by Livonia J. Patton against Matthew Telford, who was the administrator of Samuel Telford, deceased, and as such came into the possession of certain property claimed by the plaintiff. It appears from the evidence that on May 1, 1889, Samuel Telford deposited in the First National Bank of Springfield, Mo., the sum of $2,600, receiving therefor a certificate of deposit in words and figures following, viz.: "First National Bank of Springfield, Mo., May 1, 1889. L. J. Patton has deposited in this bank $2,600, payable to the order of himself, in current funds, on return of this certificate, one year after date, with six per cent interest for the time specified and no longer.

No. 2,603. A. J. CLEMENTS, Cashier."

On the 15th day of January, 1890, Samuel Telford died intestate at Eureka Springs, Arkansas, a bachelor, aged about sixty-five years, without having communicated to any one any facts relating to the certificate, or his intention concerning it. The first that was known of its existence outside of the bank and himself, was when it was found with other papers on his person after his death.

It appears from the evidence that the plaintiff in this replevin suit has the same initials and name as the person named in said certificate of deposit; that she is a maiden lady

Telford v. Patton.

who has resided all her life near Walnut Hill in Marion County, Illinois, with her parents; that in 1867 the said deceased, Samuel Telford, then of that county, began paying attentions to her, which he continued for over twenty years, and as some of the witnesses say, up to his death. He had been acquainted with her from childhood, and so far as disclosed by the evidence is the only lady to whom he ever paid any particular attentions and he was the only gentleman whose attention was received by the plaintiff. The plaintiff was not permitted to testify, but the evidence of her family shows very clearly that the relation between these two persons was not merely of a platonic order.

It is true that the evidence does not disclose any particular warmth or effusiveness, but that may be readily accounted for by their ages, he being sixty-five at his death and she about forty-eight years of age. Her mother testified that they corresponded when he was absent, and her sister states that for the last three or four years of his life Samuel Telford was part of the time in Illinois and part of the time at Eureka Springs, and that they corresponded at that time every month or so, and that he sent to plaintiff his photograph; that she had read a number of letters written to her sister by Telford, the last one in December, before he died in January. He had no particular home, but after his mother's death, which occurred about twenty-five years before his own, had boarded and made his home with others than his relations. It appears from the evidence that he was a quiet and reserved man in regard to his personal affairs and attended strictly to his own business, so that at the time of his death he left an estate in notes and bank deposits of the value of about $25,000, exclusive of the certificate of deposit, which goes to his relatives, he having died intestate. In view of his financial condition, his relations to the plaintiff, and the precarious state of his health, it is entirely reasonable to believe that the deceased intended the certificate of deposit in controversy for the plaintiff.

It is not pretended that the deposit was made for any other person. The jury were fully justified in finding for the plaintiff, if they were correctly instructed as to the law applicable to the facts in the case.

It is conceded that Samuel Telford, the deceased, retained possession of the certificate of deposit for $2,600, which he took in the name of the plaintiff, and the question of law is raised by the following instruction given by the court: " If you believe from a preponderance of the evidence that Samuel Telford on the first day of May, 1889, deposited in the First National Bank of Springfield, Mo., the sum of $2,600 in the name of and for the use and benefit of the plaintiff, and received from the bank a certificate of deposit, payable to the plaintiff, then such money and the certificate representing it would be the property of the plaintiff and she would be entitled to recover the possession of such certificate after demand."

The appellant contends that the deceased, Samuel Telford, having retained possession of the certificate of deposit, the gift was unexecuted and incomplete; that a delivery of the certificate to the appellee was essential to vest title or right in her to recover the certificate, or the money. It is conceded by appellee that delivery was essential as between the parties in order to execute the gift, but contends that a delivery of the money to a third party for the appellee was an execution of the gift. This is the hinging point of the law of the case. This money was placed in the bank in the name of the appellee, and the bank gave its certificate to that effect, and written promise to pay her, or on her order, the sum of $2,600 one year after date with six per cent interest thereon, on the return of the certificate. Its promise did not run to Samuel Telford but to the appellee. The title of the money in all general deposits passes to the bank. The title of the $2,600 *immediately before* its deposit, according to the conceded facts in this case, was in Samuel Telford, resting there only in intention to transfer it to appellee, but *at the time* of its deposit, according to the certificate, the title was in appellee, vesting by actual delivery of the money by Telford as hers in execution of that intention. Whereupon the bank received it as her money, and gave or exchanged its promise to pay her for such title so transferred to it by delivery, a certain sum of money, as evidenced by the certificate. The subsequent fact of the delivery of the certifi-

cate to Telford did not operate to retransfer the title of the money to him, or to modify or change the written promise the bank had made. The bank could not have legally paid the money called for by the certificate to Telford.

This seems to be the logical result of this transaction of Samuel Telford, and in evident accord with his intentions, which, so far as disclosed by the evidence in this record, he had manifested no desire to change. In order to get at the real life of this case, it is necessary to look back of the certificate itself, and determine what was the legal effect of what had been done before its issue, as evidenced by the facts proven.

It is evident that counsel for appellant are mistaken when they say that "appellee claims that Telford *gave her this certificate,*" upon which theory they base their argument that no gift is valid without delivery. That is not her position in this suit. Her claim is that Telford gave her *the money* represented by the certificate, and executed that gift by its delivery to a third person, the bank, which gave to her in exchange therefor the certificate; that the delivery of the certificate to Telford was for her, and he, in law, so held it. The case of Fanning v. Russell, 94 Ill. 386, is cited by appellant's counsel as a case on "all fours" with this one. The facts in that case are materially different from those in this one in two respects. First, the interest on the note was made payable to Sampson Fanning, who held the notes. Second, the notes were the things or property which Sampson Fanning proposed to give to his daughters, and in such case a gift is not complete without delivery. While he held possession of the notes, necessarily the gift was unexecuted. The property for which the notes were given, was that of the father, the title to which he transferred as his own to the maker of the notes. The title of the property for which the notes were given never was in the daughters.

The title of the money for which the certificate in this case was given was in the appellee, placed there by the direction of Telford, and executed by the delivery of the money to the bank by him. With this view of the case it is not necessary

to review the authorities cited in support of the proposition that delivery is essential to the execution of a gift, or of that class of authorities cited where the money was deposited in banks in the *name* of the *giver, in trust* for another person, for that question is not involved; upon which, however, there is a contrariety of decisions. That the gift was executed and therefore *in presenti* in this case, we think is amply supported by reason and authority. The giver in this case had lost all dominion over the property given, either by himself or another. The bank was not his agent to execute the gift and therefore the death of Telford did not operate to revoke any agency. Neither was it necessary that the appellee should have accepted the gift in his lifetime by any act or word, as by law where an *act* is done, such as in this case, which is beneficial to another, assent will be presumed. Forbes v. Jason, 6 Ill. App. 395; Cork v. Patrick, 26 N. E. Rep. 658; Gordon v. Adams, 127 Ill. 223; Masterson v. Cheek, 23 Ill. 72, 76.

There are a number of well reasoned cases that sustain the judgment in this case and follow in the same line as that of Howard v. Savings Bank, 40 Vt. 597, wherein "A" deposited in the bank in the name of "B" $220 and took a deposit book in which was the following entry: "1864. No. 530. B (giving name) deposited $220." "A" retained the deposit book until her death, when it was found among her papers. "B" knew nothing of the gift and died before "A." The court held that this was a perfected gift and that the money belonged to "B's" estate. See also Minor v. Rogers, 40 Conn. 572, where the authorities of other States are reviewed. Also South v. Lee, 2 N. Y. 591, where "D" deposited money in a bank in the name of "D for C" and took a note from the bank payable to "D for C." It was held that this was a complete change of title to the money and after "C's" death "B" could recover it.

The judgment is affirmed.

*Judgment affirmed.*